UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| METAL STORM, INC., | ) | Case No. 14-13770-RGM |
| | ) | |
| Debtor. | ) | |
| ⸻⸻⸻⸻⸻⸻ | ) | |
| | ) | |
| CHRISTOPHER DARIN and AARON LUCAN, | ) | **VERIFIED** |
| the Court-Appointed Receivers of | ) | **COMPLAINT** |
| Metal Storm Limited, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Adversary Proceeding No. |
| | ) | |
| KEVIN R. MCCARTHY, | ) | |
| the Chapter 7 Trustee of Metal Storm, Inc., | ) | ⸻⸻⸻⸻ |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |
| ⸻⸻⸻⸻⸻⸻ | ) | |

⸻⸻⸻⸻⸻⸻⸻⸻
Gregory J. Mascitti (*pro hac vice* application forthcoming)
LeClairRyan, A Professional Corporation
70 Linden Oaks
Rochester, New York 14625
(585) 270-2106
(585) 270-2166 (Fax)

and

Jonathan L. Gold (Va. Bar No. 78176)
Ryan C. Day (Va. Bar No. 76657)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
(703) 647-5924
(703) 647-5954 (Fax)

*Counsel for Christopher Darin and Aaron Lucan,*
*the Court-Appointed Receivers of Metal Storm Limited*

Plaintiffs, Christopher Darin and Aaron Lucan, the court-appointed receivers of Metal Storm Limited, as and for their verified complaint against defendant, Kevin R. McCarthy, the chapter 7 trustee of Metal Storm, Inc., allege as follows:

## THE PARTIES

1.      Metal Storm Limited ("**MSL**") is a foreign corporation organized and existing under the laws of Australia.   On July 26, 2012, MSL entered a voluntary administration proceeding in accordance with Australian law.  On November 1, 2012, the creditors of MSL resolved that MSL execute a deed of company arrangement.  On November 22, 2012, MSL executed a deed of company arrangement.  MSL operated under the deed of company arrangement until July 23, 2014.

2.      On July 23, 2014, the Supreme Court of New South Wales: (i) ordered that the deed of company arrangement be terminated; (ii) ordered that MSL be liquidated; and (iii) appointed plaintiffs, Christopher Darin and Aaron Lucan, as the receivers (the "**Receivers**" or "**Plaintiffs**") of MSL.

3.      Metal Storm, Inc. ("**MSI**" or "**Debtor**") is a corporation organized and existing under the laws of the State of Delaware.  MSI filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on October 10, 2014 (the "**Petition Date**").  Defendant, Kevin R. McCarthy (the "**Trustee**" or "**Defendant**"), was appointed as the chapter 7 trustee of MSI.

## JURISDICTION AND VENUE

4.      With respect to the claims for declaratory judgment in Counts I and II, this Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 2201 and 2202 and 28 U.S.C. §§ 157 and 1334(b) and (e).  Counts I and II are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (M), (N), and (O)

2

5.     With respect to the claim for patent infringement in Count III, which arise under the patent laws of the United States, including 35 U.S.C. § 271 *et seq.*, this Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 28 U.S.C. §§ 157 and 1334(b) and (e).  Count III is a non-core proceeding that is otherwise related to a case pursuant to 28 U.S.C. § 157(c)(1).  Plaintiffs do not consent to entry of final orders or judgment by this Court with respect to Count III.

6.     With regard to the state law claims for misappropriation of trade secrets, conversion, unfair competition, misuse of confidential information, and breach of confidentiality obligations in Counts IV through VIII, this Court has supplemental jurisdiction under 28 U.S.C. §1367 because the state law claims are closely related to the federal claims and arise from the same transactions, facts, and circumstances and under 28 U.S.C. §§ 157 and 1334(b) and (e). Counts IV through VIII are non-core proceedings that are otherwise related to a case pursuant to 28 U.S.C. § 157(c)(1).  Plaintiffs do not consent to entry of final orders or judgment by this Court with respect to Counts IV through VIII.

7.     Venue in this District is proper pursuant to 28 U.S.C. § 1409.

## BACKGROUND

8.     MSL owns 49% of the shares of Debtor.[1]  Debtor was formed by MSL for the purpose of researching and developing defense products based on MSL's technologies.

9.     MSL loaned Debtor certain monies to fund, *inter alia*, research and development, including, without limitation, research and development of the 'Maul' and 'Firestorm' weapon systems.  Debtor's bankruptcy schedules list MSL as Debtor's largest unsecured creditor with a claim of $17,304,075.00.  *See* Schedule F of the Debtor's Bankruptcy Schedules [Docket No. 1].

---

[1] Upon information and belief, 51% of the shares of Debtor are owned by employees of Debtor who are United States citizens.

On April 16, 2015, the Receivers filed a proof of claim on behalf of MSL in the amount of $21,166,040.40 [Claim No. 15].

## THE PREPETITION LICENSE AGREEMENT
## AND TECHNICAL ASSISTANCE AGREEMENT

10.     Upon information and belief, on February 6, 2006, MSL and MSI entered into an intellectual property license agreement (the "**License Agreement**") pursuant to which MSL, as licensor, granted MSI, as licensee, a nonexclusive license within the United States to conduct research and development on and regarding the Intellectual Property (as defined in the License Agreement) and the Intellectual Property Rights (as defined in the License Agreement) associated therewith.  The License Agreement prohibited MSI from commercializing or exploiting the Intellectual Property and the Intellectual Property Rights associated therewith without first receiving the approval of the shareholders of MSI who together held at least 60% of the issued shares in MSI.

11.     The License Agreement defines "**Products**" as "any system, method, or article of manufacture that incorporates the Intellectual Property."

12.     The License Agreement defines "**Intellectual Property**" as "Licensor's Patents; Licensor's Trademarks; Licensor's Copyrighted Works; and Licensor's Trade Secrets, including such Improvements as made available by the Licensor to the Licensee from time to time and including Improvements made by the Licensee."

13.     The License Agreement defines "**Trade Secrets**" as "information, including the trade secrets enumerated in Schedule 1, as well as any technical or non-technical data, formulae, patterns, compilations, program devices, methods, techniques, drawings or processes, financial data, or lists of actual or potential customers which is now possessed or developed or acquired by Licensor prior to or during the Term of the License that: (i) is sufficiently secret to derive

4

economic value, actual or potential, from not being generally known to, and not being readily

ascertainable by proper means by, other persons who can obtain economic value from its

disclosure or use, and (ii) is the subject of efforts by Licensor that are reasonable under the

circumstances to maintain its secrecy."

14.     The License Agreement defines "**Improvements**" as "all enhancements,

modifications, derivative works, or other changes to the whole or any part of the Intellectual

Property (whether patentable or not), including technical information relating to manufacturing

or selling Products, developed or acquired by either party during the Term of the License."

15.     The License Agreement defines "**Intellectual Property Rights**" as "the right to

develop, enhance, make, manufacture, have manufactured, package, sell, market, offer for sale,

distribute, modify, improve, assemble, test, use in commerce, reproduce, create derivative works

from, or otherwise use the Intellectual Property with respect to one or more Product."

16.     In addition to the License Agreement, MSL and MSI also entered into a technical

assistance agreement providing the terms and conditions upon which MSI could, in compliance

with the International Traffic in Arms Regulations of the United States Department of State

("**ITAR**"), export technical data to MSL in Australia pertaining to the Australian-origin technical

data licensed by MSL for use by MSI in the United States under the License Agreement (the

"**Technical Assistance Agreement**").

17.     Upon information and belief, MSL terminated the License Agreement prior to the

Petition Date.  In the Sale Motion (as defined below), the Trustee asserts that the License

Agreement was rejected under Section 365 of the Bankruptcy Code.  The Receivers confirmed

termination of the License Agreement with the Trustee on April 10, 2015.

5

Case 14-13770-RGM    Doc 25    Filed 05/01/15    Entered 05/01/15 16:52:30    Desc Main
Document      Page 6 of 27

18.    Upon information and belief, Debtor does not currently have any right to develop, enhance, make, manufacture, have manufactured, package, sell, market, offer for sale, distribute, modify, improve, assemble, test, use in commerce, reproduce, create derivative works from, or otherwise use the Intellectual Property or any Products or any Improvements made thereto.

19.    Further, to the extent that Debtor is in possession of any Confidential Information (as defined in the License Agreement), Debtor is obligated under the License Agreement to return such Confidential Information to MSL or destroy it.

20.    The License Agreement defines "**Confidential Information**" as "any non-public information explicitly provided by one party (the Disclosing Party) to another party (the Receiving Party) which is designated as confidential or which, under the circumstances surrounding its disclosure, would normally be treated as confidential, including, but not limited to, any trade secrets, information relating to product plans, product designs, product costs, product prices, product names, finances, marketing plans, business opportunities, personnel, research, development, know-how, executable files, and source code, including without limitation its underlying logic and concepts.  Confidential Information does not include any information that (i) the Receiving Party can prove was known prior to the date of this Agreement without an obligation to keep it confidential, (ii) the Receiving Party can prove was lawfully obtained from a third party without any obligation of confidentiality, (iii) is or becomes part of the public domain through no act or violation of any obligation of either party, or (iv) is required to be disclosed by court order or operation of law."

### THE TRUSTEE'S PROPOSED SALE OF THE MSL LICENSED PRODUCTS AND PROPRIETARY INFORMATION

21.    Upon information and belief, Debtor does not own any patents.

22.     Upon information and belief, Debtor's primary business was the research and development of weapons systems based upon MSL's technology.  Debtor's bankruptcy schedules list the License Agreement as an executory contract.  *See* Schedule G of Debtor's Bankruptcy Schedules [Docket No. 1].

23.     On January 19, 2015, the Receivers sent an e-mail to Mr. N.T. Arrington (the "**January 19th Email**") notifying him that the assets he intended to sell may include assets in which MSL held an interest, advising him that MSL did not consent to a sale, and requesting that he provide them with the details surrounding the sale.  A copy of the January 19th Email is attached hereto as **EXHIBIT A**.

24.     The Receivers did not receive a response to the January 19th Email.

25.     On February 22, 2015, the Receivers' counsel in Australia located contact information for the Trustee and provided it to the Receivers.

26.     On February 27, 2015, the Receivers notified the Trustee of their appointment as the receivers of MSL and advised the Trustee that the Receivers did not consent to the sale of any assets.  A copy of the Receivers' letter to the Trustee dated February 27, 2015 is attached hereto as **EXHIBIT B**.

27.     On February 28, 2015 (Australia time), the Trustee responded to the Receivers by email (the "**February 28th Email**") and indicated that he would be filing a motion to sell certain assets.  A copy of the Trustee's February 28th Email is attached hereto as **EXHIBIT C**.

28.     Notwithstanding the Receivers' lack of consent to the sale, the Trustee filed a motion [Docket No. 15] (the "**Sale Motion**") to sell the following assets: one 'Maul' prototype weapon – an electronically fired 12-gauge weapon capable of providing both lethal and non-lethal munitions (the "**Maul Weapon System**"), one 'Firestorm' weapon – a multi-barrel

projectile machine gun system (the "**Firestorm Weapon System**"), and design data, engineering

files, notebooks, digital files, and technical data packages related to the Maul and Firestorm

weapon systems (the "**Maul and Firestorm Data Packages**") (collectively, the "**MSL Licensed**

**Products and Proprietary Information**").

29.     Upon information and belief, the Maul Weapon System and the Firestorm

Weapon System are articles of manufacture that incorporate the Intellectual Property that had

been licensed to Debtor by MSL under the License Agreement and are therefore Products

covered by the License Agreement.

30.     Upon information and belief, the Maul and Firestorm Data Packages incorporate

the Intellectual Property that had been licensed to Debtor by MSL under the License Agreement,

including, without limitation, confidential, proprietary, and trade secret information of MSL (the

"**MSL Proprietary Information**").

31.     On March 26, 2015, the Court entered an Order approving the sale Motion

[Docket No. 17] (the "**Sale Order**").  In the Sale Order, the Trustee acknowledged the

Receivers' objection to the sale and reserved his right to alter the proposed sale assets based on

further communications with the Receivers.

32.     Upon information and belief, the Trustee, over the Receivers' objection,

subsequently advertised and offered to sell the MSL Licensed Products and Proprietary

Information.

33.     On April 8, 2015, the Receivers' counsel further advised the Trustee that MSL

opposed the sale of the MSL Licensed Products and Proprietary Information.

34.     On April 14, 2015, the Trustee advised the Receivers' counsel that the Trustee had accepted a bid to sell the MSL Licensed Products and Proprietary Information to a third party.

35.     Upon information and belief, the Trustee did not conduct any analysis of MSL's patents and did not investigate whether MSL's patents covered the MSL Licensed Products and Proprietary Information prior to offering the MSL Licensed Products and Proprietary Information for sale and agreeing to sell the MSL Licensed Products and Proprietary Information.

36.     By letter dated April 17, 2015, the Receivers' counsel notified the Trustee that the offer to sell and proposed sale of the MSL Licensed Products and Proprietary Information constituted a willful infringement of MSL's patents and demanded that the Trustee discontinue any further efforts to sell the MSL Licensed Products and Proprietary Information.  A copy of the April 17, 2015 letter is attached hereto as **EXHIBIT D**.

37.     Upon information and belief, notwithstanding the Receivers' demands, the Trustee intends to proceed with a sale of the MSL Licensed Products and Proprietary Information.[2]

### THE MAUL WEAPON SYSTEM, THE FIRESTORM WEAPON SYSTEM, AND THE MAUL AND FIRESTORM DATA PACKAGES INCORPORATE MSL'S INTELLECTUAL PROPERTY

**A.     The Maul Weapon System**

38.     The Maul Weapon System is a stacked projectile electronic shotgun.  The Maul Weapon System includes a removable barrel with a 5-shot stacked projectile magazine that is

---

[2] The Trustee has agreed to provide the Receivers' counsel with at least four (4) business days prior written notice before closing any sale of the MSL Licensed Products and Proprietary Information.  As a result, the Receivers do not presently seek a temporary restraining order or preliminary injunction to enjoin the proposed sale.  The Receivers reserve their right to seek a temporary restraining order and preliminary injunction in the event the Trustee notifies the Receivers that he intends to proceed with a closing of any sale of the MSL Licensed Products and Proprietary Information.

embodied in one or more of the Patents-In-Suit (as defined below).  The Maul Weapon System is
illustrated in the data sheet below:



39.    A June 3, 2008 MSL press release submitted to the United States Securities and
Exchange Commission ("**SEC**"), in relation to the Maul Weapon System, stated in relevant part
as follows:

> The MAUL design incorporates Metal Storm Limited's patented,
> electronically initiated stacked projectile technology.  It is capable
> of firing munitions across the spectrum, from fragmenting and
> door breaching grenades to non-lethal projectiles for law
> enforcement applications.
>
> Metal Storm Limited CEO, Dr. Lee Finniear, said the ONR
> contract provides a catalyst for the next stage of taking MAUL on
> its path to commercial production.

> "It is clear from this latest US Navy contract that the MAUL weapon has the potential to provide a capability needed by today's fighting soldier," Dr. Finniear said.
>
> "I am very pleased that Metal Storm technology is embedded at the core of this unique weapon, and that the potential benefits of MAUL appear clear to the US Military."

A copy of the MSL press release as submitted to the SEC is attached as **EXHIBIT E**.

40.    MSI General Manager, Peter Faulkner interviewed with Bloomberg News in relation to the Maul Weapon System: "Mr. Faulkner said, 'We are pleased to have achieved all of our design objectives for the MAUL, especially the weight, which at 1.8 lbs. is ten percent less than our original expectations.' A weapon of this size and weight would not have been possible without Metal Storm's unique Electronic Ballistics Technology." A copy of the Bloomberg News article is attached as **EXHIBIT F**.

**B.    The Firestorm Weapon System**

41.    The Firestorm Weapon System is a 40 mm electronic weapon system including four staggered barrels in an array that deliver stocked munitions that are electronically initiated. The stacked barrels are embodied in one or more of the Patents-In-Suit (as defined below). The Firestorm Weapon System is illustrated in the data sheet below:



C.    **The Maul and Firestorm Data Packages**

42.    Upon information and belief, the Maul and Firestorm Data Packages include detailed technical data and information on the design, systems, functionality, including features incorporated into the Maul Weapon System and the Firestorm Weapon System.

43.    The Maul and Firestorm Data Packages include information that is proprietary, confidential, and/or trade secret information of MSL that was provided to the Debtor under confidentiality restrictions and that is separate from and in addition to any patented MLS technology.

12

## COUNT I
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §§ 2201 AND 2202

44.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 43 as if set forth in full herein.

45.     Upon information and belief, the Maul Weapon System is an article of manufacture that incorporates the Intellectual Property that had been licensed to Debtor by MSL under the License Agreement and is therefore a Product covered by the License Agreement.

46.     Upon information and belief, the Firestorm Weapon System is an article of manufacture that incorporates the Intellectual Property that had been licensed to Debtor by MSL under the License Agreement and is therefore a Product covered by the License Agreement.

47.     The License Agreement has been terminated.

48.     As a result of the termination of the License Agreement, the Trustee has no rights in or to the Intellectual Property or to manufacture or sell any Products.

49.     The Trustee is not authorized to sell the Maul Weapon System or the Firestorm Weapon System.

50.     Accordingly, an actual, substantial, and justiciable controversy exists between the Receivers and the Trustee concerning the extent of Debtor's interest, if any, in the Maul Weapon System and the Firestorm Weapon System and whether the Trustee may sell the Maul Weapon System and the Firestorm Weapon System.

51.     Such a controversy is sufficient to warrant the issuance of a declaratory judgment that (i) the Maul Weapon System and the Firestorm Weapon System are articles of manufacture that incorporate the Intellectual Property that had been licensed to Debtor by MSL under the License Agreement, (ii) the Maul Weapon System and the Firestorm Weapon System are Products covered by the License Agreement, (iii) the License Agreement has been terminated,

and (iv) as a result of the termination of the License Agreement, the Trustee has no right to develop, enhance, make, manufacture, have manufactured, package, sell, market, offer for sale, distribute, modify, improve, assemble, test, use in commerce, reproduce, create derivative works from, or otherwise use the Intellectual Property or any Product, including, without limitation, the Maul Weapon System or the Firestorm Weapon System or any Improvements made thereto.

**COUNT II**
**DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. §§ 2201 AND 2202**

52.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 51 as if set forth in full herein.

53.    Upon information and belief, the Maul and Firestorm Data Packages incorporate the Intellectual Property that had been licensed to Debtor by MSL under the License Agreement, including, without limitation, the MSL Proprietary Information.

54.    As a result of the termination of the License Agreement, the Trustee has no rights in or to the Intellectual Property, including, without limitation, the MSL Proprietary Information, and is obligated to deliver to MSL or, at MSL's discretion destroy, all of MSL's Confidential Information (as defined in the License Agreement) in the possession or under the control of Debtor consistent with the provisions of the Technical Assistance Agreement.

55.    The Trustee is not authorized to sell the Maul and Firestorm Data Packages.

56.    Accordingly, an actual, substantial, and justiciable controversy exists between the Receivers and the Trustee concerning the extent of Debtor's interest, if any, in the Maul and Firestorm Data Packages and whether the Trustee may sell the Maul and Firestorm Data Packages.

57.    Such a controversy is sufficient to warrant the issuance of a declaratory judgment that (i) the Maul and Firestorm Data Packages incorporate the Intellectual Property, including,

14

without limitation, the MSL Proprietary Information, that had been licensed to Debtor by MSL

under the License Agreement, (ii) the MSL Propriety Information constitutes Confidential

Information and Trade Secrets under the License Agreement, (iii) the License Agreement has

been terminated, (iv) as a result of the termination of the License Agreement, the Trustee has no

right to develop, enhance, make, manufacture, have manufactured, package, sell, market, offer

for sale, distribute, modify, improve, assemble, test, use in commerce, reproduce, create

derivative works from, or otherwise use the Intellectual Property or any Product, including,

without limitation, the Maul and Firestorm Data Packages or any Improvements made thereto,

and (v) the Maul and Firestorm Data Packages include the MSL Proprietary Information and

must be delivered to MSL or, at MSL's discretion, destroyed.

## COUNT III
## PATENT INFRINGEMENT

58.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 57 as if set

forth in full herein.

### A.      The Patents-In-Suit

59.     On March 16, 1999, U.S. Patent No. 5,883,329 (the "**'329 Patent**"), titled "Barrel

Assembly," was duly and lawfully issued by the United States Patent and Trademark Office

("**PTO**").  A copy of the '329 Patent is attached hereto as **EXHIBIT G**.

60.     On September 26, 2000, U.S. Patent No. 6,123,007 (the "**'007 Patent**"), titled

"Barrel Assembly," was duly and lawfully issued by the PTO.  A copy of the '007 Patent is

attached hereto as **EXHIBIT H**.

61.     On October 16, 2001, U.S. Patent No. 6,301,819 (the "**'819 Patent**"), titled

"Barrel Assembly With Axially Stacked Projectiles," was duly and lawfully issued by the PTO.

A copy of the '819 Patent is attached hereto as **EXHIBIT I**.

15

62.     On May 6, 2003, U.S. Patent No. 6,557,449 (the "**'449 Patent**"), titled "Firearms," was duly and lawfully issued by the PTO.  A copy of the '449 Patent is attached hereto as **EXHIBIT J**.

63.     On March 27, 2007, U.S. Patent No. 7,194,945 (the "**'945 Patent**"), titled "Projectile Firing Apparatus," was duly and lawfully issued by the PTO.  A copy of the '945 Patent is attached hereto as **EXHIBIT K**.

64.     On April 20, 2010, U.S. Patent No. 7,698,849 (the "**'849 Patent**"), titled "Combined Electrical Mechanical Firing Systems," was duly and lawfully issued by the PTO.  A copy of the '849 Patent is attached hereto as **EXHIBIT L**.

65.     MSL is the owner, by assignment, of the '329 Patent, '007 Patent, '819 Patent, '449 Patent, '945 Patent, and the '849 Patent (collectively, the "**Patents-In-Suit**").  The Patents-In-Suit relate generally to barrel assemblies for weapon systems, including the Maul Weapon System and the Firestorm Weapon System.

66.     At all times relevant to this dispute, MSL has been the owner by assignment of the Patents-In-Suit and holds the right to sue and recover damages and injunctive relief for infringement thereof, including remedies for past infringement.

### B.      Infringement of the Patents-In-Suit

67.     The Trustee has directly and/or indirectly infringed, and continues to directly and/or indirectly infringe the '329 Patent, the '819 Patent, the '449 Patent, the '945 Patent, and the '849 Patent under 35 U.S.C. § 271, literally or under the doctrine of equivalents, by offering to sell and/or attempting to complete the sale of, the Maul Weapon System and the Firestorm Weapon System, products that practice and embody claims of the above-listed patents.

68.    The Trustee has further directly and/or indirectly infringed, and continues to directly or indirectly infringe the '007 Patent under 35 U.S.C. § 271, literally or under the doctrine of equivalents, by offering to sell and/or attempting to complete the sale of the Maul Weapon System, a product that practices and embodies claims of the '007 Patent.

69.    With regard to indirect infringement, the Trustee's offer for sale and/or attempts to complete the sale of the Maul Weapon System and the Firestorm Weapon System contributes to the infringement of the Patents-In-Suit.

70.    The Maul Weapon System and the Firestorm Weapon System each incorporate a barrel portion that is a component of the barrel assembly embodied in the Patents-In-Suit that constitutes a material part of the patented inventions.

71.    The Maul Weapon System and Firestorm Weapon System are especially adapted for use with stacked projectiles as described by the barrel assemblies of the Patents-In-Suit.

72.    Upon information and belief, the Maul Weapon System and Firestorm Weapon System only operate with specialized stacked projectiles in accordance with the barrel assemblies of the Patents-In-Suit, they are specially designed and developed so they are not staple articles or commodities of commerce, and they are not suitable for substantial non-infringing uses because they are designed to be used with stackable projectiles within the scope of the claims of the Patents-In-Suit.

73.    The Trustee has had actual notice of the unique and infringing nature of the Maul Weapon System and the Firestorm Weapon System.  As set forth above, the Receivers and their counsel have contacted the Trustee and notified the Trustee of MLS's patented technologies, including the Patents-In-Suit, and that the Trustee is infringing the Patents-In-Suit by his offers to sell and attempts to complete the sale of the Maul Weapon System and Firestorm Weapon

17

System.  Despite this knowledge, the Trustee has continued his infringing conduct with a specific

intent to contribute to infringement of the Patents-In-Suit.

74.    In further regard to indirect infringement, the Trustee's offer for sale and/or

attempts to complete the sale of the Maul Weapon System and the Firestorm Weapon System

also induces infringement of the Patents-In-Suit.

75.    The Trustee's offer for sale and/or attempts to complete the sale of the Maul

Weapon System and the Firestorm Weapon System induces the purchaser to use the weapon

systems with specialized, stacked projectiles, which infringes the Patents-In-Suit.

76.    Upon information and belief, the Maul Weapon System and Firestorm Weapon

System include barrels that only operate with projectile assemblies as described in the Patents-

In-Suit.

77.    Despite notice of the Patents-In-Suit and the infringing nature of the weapon

systems in combination with specially designed stacked projectiles, the Trustee offered the

weapon systems for sale and/or is attempting to complete the sale of those weapon systems with

the specific intent to induce infringement of the Patents-in-Suit.

78.    MSL has been and continues to be damaged by the Trustee's direct and indirect

infringement of the Patents-In-Suit and MSL is entailed to all remedies available under 35

U.S.C. §§ 284 and 285.

79.    The Trustee has had notice of MSL's rights regarding the Patents-In-Suit.  As set

forth above, the License Agreement is listed in Debtor's bankruptcy schedules, and the Receivers

or their counsel contacted the Trustee, notified the Trustee of the Patents-In-Suit and the

Trustee's infringement thereof, and demanded that the Trustee cease its infringing conduct.

18

80.     The Trustee ignored this actual notice and MSL's demands and continued his infringing conduct, including offering to sell, accepting a bid to sell, and attempting to complete the sale of the Maul Weapon System and the Firestorm Weapon System after the notices.

81.     Upon information and belief, despite this constructive and actual knowledge of the Patents-In-Suit, the Trustee knowingly and intentionally offered for sale and/or attempted to complete the sale of those products that are encompassed by the claims in the Patents-In-Suit, and that infringe the Patents-In-Suit.  As a result, the Trustee is also willfully infringing the Patents-In-Suit.

82.     This willful infringement entitles MSL to exceptional case remedies, including without limitation, the award of attorneys' fees, pursuant to 35. U.S.C. § 285.

## COUNT IV
## UNFAIR COMPETITION

83.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 82 as if set forth in full herein.

84.     Through the actions described herein, the Trustee has engaged in unfair competition with MSL, and done so with the express purpose of willfully and maliciously injuring MSL in its business, by misusing and misappropriating the Maul and Firestorm Data Packages, which include the MSL Proprietary Information.

85.     The actions of the Trustee described herein, including misuse and misappropriation of the MSL Proprietary Information, have been undertaken willfully, knowingly and with reckless disregard of MSL's rights.

86.     The Trustee is continuing to engage in this unfair competition for the express purpose of willfully and maliciously injuring MSL in its business, and will continue to engage in unfair competition absent intervention by this Court.

87.     The actions of the Trustee in engaging in unfair competition with MSL have

caused, are causing and will continue to cause irreparable injury to MSL, injury for which MSL

has no adequate remedy at law.

88.     MSL is entitled, as a matter of law, to temporary and permanent injunctive relief

restraining the Trustee from further engaging in unfair competition, as well as compensatory and

punitive damages.

## COUNT V
## CONVERSION

89.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 88 as if set

forth in full herein.

90.     The Trustee has taken without authority, and converted to his own use and benefit

and the use and benefit of third parties, the MSL Proprietary Information.

91.     The Trustee's taking of the MSL Proprietary Information constitutes conversion.

92.     MSL has been damaged by the Trustee's conversion of its property, and will

continue to suffer damages during the pendency of this action.

93.     The Trustee's actions in converting MSL's property have been undertaken

willfully and knowingly and/or with reckless disregard for the Trustee's obligations.

94.     MSL is entitled as a matter of law to recover from the Trustee the value of the

property converted and damages arising out of the Trustee's conversion.

## COUNT VI
## MISUSE OF CONFIDENTIAL INFORMATION

95.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 94 as if set

forth in full herein.

96.     MSL has developed with great effort and with significant financial investment a

wide array of confidential and/or proprietary business information that was used by MSL to

develop its products embodied by the MSL Proprietary Information.  The MSL Proprietary

Information is highly valuable to MSL.

97.    By offering to sell and/or selling the Maul and Firestorm Data Packages, the

Trustee is improperly misappropriating and misusing the MSL Proprietary Information.

98.    MSL has been damaged by the Trustee's misappropriation and misuse of the MSL

Proprietary Information in an amount to be determined at trial.

## COUNT VII
## BREACH OF CONFIDENTIALITY OBLIGATIONS

99.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 98 as if set

forth in full herein.

100.    MSL provided the MSL Proprietary Information, including the Maul and

Firestorm Data Packages, to MSI pursuant to the License Agreement between the two parties.

101.    MSL met its obligations under the License Agreement.

102.    The License Agreement provides that:

> With respect to Confidential Information, a Receiving Party shall
> use Confidential Information solely to the limited extent necessary
> for exercising its rights under this Agreement.  The Receiving
> Party shall prevent and not allow any Confidential Information or
> materials to be disclosed, used, sold, assigned, leased, sub-
> licensed, commercially exploited, or marketed in any way or
> manner by the Receiving Party or its employees, agents or
> representatives to any third parties.  All Confidential Information
> shall be protected by the Receiving Party from disclosure to others
> with at least the same degree of care as that which is accorded its
> own proprietary information.

*See* License Agreement, ¶ 15.

103.   According to the License Agreement, Confidential Information means:

> any non-public information explicitly provided by one party (the Disclosing Party) to another party (the Receiving Party) which is designated as confidential or which, under the circumstances surrounding its disclosure, would normally be treated as confidential, including, but not limited to, any trade secrets, information relating to product plans, product designs, product costs, product prices, product names, finances, marketing plans, business opportunities, personnel, research, development, know-how, executable files, and source code, including without limitation its underlying logic and concepts.

104.   The License Agreement further provides that:

> Licensee and Licensor further specifically acknowledge that Licensee and Licensor's Trade Secrets (collectively "the Trade Secrets") are confidential and proprietary, and the Receiving Party agrees to retain and treat any and all Trade Secrets, including all supporting documentation, in confidence, and shall not provide, disclose or otherwise make available the Trade Secrets, or any part thereof, in any form to any person or entity other than its employees, sublicensees, or authorized third party consultants that have a need to know of the Trade Secrets on behalf of the Receiving Party.

*See id.* at ¶ 15.2.

105.   The confidentiality provisions recited above survive termination of the License Agreement.  *See id.* at ¶ 14.5.

106.   The Trustee's proposed sale of the Maul and Firestorm Data Packages will result in the disclosure of the MSL Proprietary Information in violation of the terms of the License Agreement between MSL and MSI.

107.   By offering to sell and/or selling the MSL Proprietary Information, the Trustee would be in breach of the confidentiality provisions of the License Agreement.

108.   MSL is entitled to temporary and permanent injunctive relief restraining the Trustee from breaching the terms of the License Agreement.

22

109.    MSL is also entitled to all damages stemming from this breach of contract.

## COUNT VIII
## VIOLATIONS OF THE
## VIRGINIA UNIFORM TRADE SECRETS PROTECTION ACT
## (VA. CODE ANN. § 59.1-336 *ET SEQ.*)

110.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 109 as if set forth in full herein.

111.    The confidential and proprietary information, including the Maul and Firestorm Data Packages, in the possession of the Trustee constitute trade secrets of MSL as that term is defined in the Virginia Uniform Trade Secrets Act, Va. Code Ann. § 59.1-336 *et seq*. (hereinafter "**VUTSA**").

112.    The Trustee has misappropriated, and is continuing to misappropriate, the trade secrets of MSL.

113.    The Trustee's proposed sale of the Maul and Firestorm Data Packages will violate VUTSA § 59.1-336 *et seq.*, by misappropriating MSL's trade secrets.

114.    Upon information and belief, the Trustee has further misappropriated MSL's trade secrets in violation of VUTSA § 59.1-336 *et seq.* by providing the Maul and Firestorm Data Packages to the proposed buyer.

115.    Under VUTSA § 59.1-337, this Court has the authority to issue an injunction against any actual or threatened misappropriation of trade secrets.

116.    The Trustee should be permanently enjoined from any further use and/or sale of MSL's trade secrets and directed to return and any and all trade secret information, including the Maul and Firestorm Data Packages, illegally misappropriated from MSL.

23

117.    Under VUTSA § 59.1-338, MSL is entitled to an award of both its actual damages

and the unjust enrichment caused by misappropriation that is not accounted for in computing

actual loss.

118.    The Trustee knew at all relevant times that MSL did not consent to the copying,

use, or disclosure of MSL's trade secrets.

119.    The Trustee's actions were willful and malicious, justifying an award of punitive

damages and attorneys' fees under VUTSA § 59.1-338.1.

**WHEREFORE**, for the foregoing reasons, Plaintiffs respectfully request that the Court

enter judgment against Defendant:

(i)     on Count I of the Complaint, declaring that (i) the Maul Weapon System and the
Firestorm Weapon System are articles of manufacture that incorporate the
Intellectual Property that had been licensed to Debtor by MSL under the License
Agreement, (ii) the Maul Weapon System and the Firestorm Weapon System are
Products covered by the License Agreement, (iii) the License Agreement has been
terminated, and (iv) as a result of the termination of the License Agreement, the
Trustee has no right to develop, enhance, make, manufacture, have manufactured,
package, sell, market, offer for sale, distribute, modify, improve, assemble, test,
use in commerce, reproduce, create derivative works from, or otherwise use the
Intellectual Property or any Product, including, without limitation, the Maul
Weapon System or the Firestorm Weapon System or any Improvements made
thereto;

(ii)    on Count II of the Complaint, declaring that (i) the Maul and Firestorm Data
Packages incorporate the Intellectual Property, including, without limitation, the
MSL Proprietary Information, that had been licensed to Debtor by MSL under the
License Agreement, (ii) the MSL Propriety Information constitutes Confidential
Information and Trade Secrets under the License Agreement, (iii) the License
Agreement has been terminated, (iv) as a result of the termination of the License
Agreement, the Trustee has no right to develop, enhance, make, manufacture,
have manufactured, package, sell, market, offer for sale, distribute, modify,
improve, assemble, test, use in commerce, reproduce, create derivative works
from, or otherwise use the Intellectual Property or any Product, including, without
limitation, the Maul and Firestorm Data Packages or any Improvements made
thereto, and (v) the Maul and Firestorm Data Packages include the MSL
Proprietary Information and must be delivered to MSL or, at MSL's discretion,
destroyed;

(iii)   on Count III of the Complaint, adjudging that the Trustee has infringed, literally or under the doctrine of equivalents, the Patents-In-Suit, awarding MSL the damages to which is entitled under 35 U.S.C. § 284 for the Trustee's past infringement and any continuing or future infringement, awarding MSL an injunction finally and permanently enjoining the Trustee from further infringement, and ordering a full accounting for the same, and finding that this is an exceptional case under 35 U.S.C. § 285 and awarding MSL attorneys' fees and enhanced damages for the Trustee's willful infringement;

(iv)   on Count IV of the Complaint, adjudging that the Trustee has engaged in unfair competition and awarding MSL all damages and remedies relating thereto;

(v)   on Count V of the Complaint, adjudging that the Trustee has engaged in conversion and awarding MSL all damages and remedies relating thereto;

(vi)   on Count VI of the Complaint, adjudging that the Trustee has misappropriated MSL Proprietary Information and awarding MSL all damages and remedies relating thereto;

(vii)   on Count VII of the Complaint, adjudging that the Trustee has breached confidentiality obligations owed to MSL and awarding MSL all damages and remedies relating thereto;

(viii)   on Count VIII of the Complaint, adjudging that the Trustee has misappropriated MSL's trade secrets and awarding MSL all damages and remedies relating thereto; and

(ix)   granting such other and further relief as the Court deems just and proper.

Dated: May 1, 2015                     Respectfully submitted,

                                       **CHRISTOPHER DARIN AND AARON LUCAN,**
                                       **THE COURT-APPOINTED RECEIVERS OF**
                                       **METAL STORM LIMITED**


                                       /s/ Ryan C. Day
                                       Gregory J. Mascitti (*pro hac vice* application forthcoming)
                                       LeClairRyan, A Professional Corporation
                                       70 Linden Oaks
                                       Rochester, New York 14625
                                       (585) 270-2106
                                       (585) 270-2166 (Fax)

                                       and

Jonathan L. Gold (Va. Bar No. 78176)
Ryan C. Day (Va. Bar No. 76657)
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
(703) 647-5924
(703) 647-5954 (Fax)

*Counsel for Christopher Darin and Aaron Lucan,*
*the Court-Appointed Receivers of Metal Storm Limited*

## VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the ___1st___ day of ___May___, 2015.

_Aaron Lucan_

Executed on the ___1st___ day of ___May___, 2015.

_Christopher Darin_